Simons, J.
(dissenting). There should be a reversal and a new trial because of the trial court’s errors in construing the contract between the parties and permitting the jury to apply the provisions of the Buffalo Building Code to alter their duties and responsibilities to each other. The majority agrees error was committed by reading the provisions of the code but finds it to be harmless. I do not.
This action involves a suit by a contractor against an owner for failing to pay for construction work on a parking garage that was admittedly defective — defective because the concrete *894 topping applied to the parking surfaces failed to bond. In responding to the owner’s defense of nonperformance, the contractor took two positions: (1) the concrete mix used to finish the garage was approved by the owner/architect* and (2) even if it had used an improper concrete mix — one other than the mix approved by the architect — the architect had a duty to check up on the contractor and discover that the mix was different from the approved mix.
During trial, the court held that the architect was responsible for approving the ingredients in the design mix of the concrete as a matter of law. This belief apparently was induced either by an erroneous interpretation of the agreement between the owner and the contractor or by the court’s error in expanding the duties of the architect by reference to the Buffalo Building Code. The ruling, on either ground, was error and the judgment should not stand.
The duties of the owner, and the architect acting on his behalf, were spelled out in the standard American Institute of Architects contract executed by the parties. Under the contract, the architect’s obligation to the owner was to visit the jobsite periodically to insure that the work was progressing in accordance with the contract documents, to keep the owner informed and to guard against defects and deficiencies in the work. The architect was not responsible for and had no control over the means, methods, techniques, sequences or procedures of construction. He could reject work not conforming with the contract documents but his failure to exercise this authority did not alter the responsibilities of the contractor. The architect was required to review and approve the contractor’s shop drawings, product data and samples "but only for conformance with the design concept of the Work and with the information given in the Contract Documents”.
Under the agreement the contractor was solely responsible for all construction and he was not relieved of his obligation to perform the work according to the contract documents either by the activities of the architect in administering the contract or by inspection tests or approvals required or performed. The contractor also had the obligation, after reviewing the architect’s plans and specifications, to submit shop drawings, product data and samples and obtain the architect’s *895 approval of them before proceeding with the work. The contract provided, however, that approval by the architect would not relieve the contractor from complying with the specifications unless the architect had been informed in writing of the deviation and approved it. More importantly, the contract provided that the "[c]ontractor shall not be relieved from responsibility for errors or omissions in the Shop Drawings, Product Data or Samples by the Architect’s approval thereof’.
The natural conclusion from a review of these standard contract provisions is that architects work for owners — the only party with whom they contract — to ensure that the plans and specifications as drawn are met. The architect has the duty to "inspect” and "approve” the shop drawings, product data and samples submitted by the contractor, but nothing he does or does not do changes the duties owed by the contractor to the owner or imposes a duty on the architect in favor of the contractor which relieves the contractor from the responsibility for errors or omissions contained in the shop drawings, product data or samples.
Notwithstanding these provisions, a major dispute developed in this case about the legal effect of the architect’s "approval” of the concrete mixes. Under the contract provisions, the architect was required to supply the contractor with the specifications for the strength of the concrete and it did so. In fact the architect changed this specification, once during the work, as the majority note (see, majority mem, at 893). However, the "design mix” — the ingredients or recipe necessary to reach the desired strength — was not part of the architect’s specifications. Instead, as all parties concede, the ingredients or recipe for the mix was prepared by a subcontractor, an agent of the contractor. These design mixes were then "inspected” and "approved” by the architect. The trial court ruled as a matter of law that by approving these design mixes, the architect assumed legal responsibility for their ability to properly bond and its ruling drastically reduced the contractor’s exposure to liability. The court relied on section 2.2.14 of the contract which requires the architect to "review and approve or take other appropriate action upon contractor’s submittals such as Shop Drawings, Project Data and Samples”.
It is apparent from the testimony in the record that there is no fixed meaning to "approval” as used in this section and the court’s construction of it conflicted with the plain language of other parts of the contract (particularly § 4.12.6). Moreover, *896 various witnesses interpreted the language of the contract differently, testifying that approval connoted only that the sample was strong enough for the job assigned. Defendant offered to prove that approval did not constitute approval of the ingredients but the court denied its offer. At best, it would seem that there was a question of fact on the meaning of the contract language which had to be resolved before plaintiff could establish its case, i.e., before the contractor could be excused from performance and blame assigned to the architect for approving a mix that would not bond.
But further than that, plaintiff’s attorney introduced chapter 12, § 1.3.1 of the Buffalo Building Code into the trial. That provision provides: "Inspection: Concrete work on site shall be inspected by the engineer or architect responsible for its design or by a competent representative responsible to him, who shall keep a record and shall cover the quality and quantity of concrete materials, the mixing, placing and curing of the concrete, the placing of the reenforcing steel, the sequence of erection and connection of precast members and general progress of the work.” (Emphasis added.) This provision imposes on the architect a continuing duty of supervision not found in the contract. Nevertheless, the court permitted counsel to read from the code and refer to provisions of it during the trial and it charged the jury on its requirements. Indeed, after deliberating, the jury returned and asked the court for further instructions on the contract and the code and the court read two applicable code sections, including chapter 12, § 1.3.1 set forth above. This permitted the jury to impose a burden on the architect, beyond any possible interpretation of the contract, which would excuse the contractor’s defective performance.
And there was evidence to justify them in doing just that. Consider, for example, this exchange between plaintiff’s expert and counsel for the owner.
"Q. Isn’t it your belief that allowing the installation of concrete with excessive recorded violations of approved mix proportions played a significant role in the unbonding of the concrete?
"A. Yes, that’s what I stated.
"Q. Whose responsibility is it to see that the concrete actually installed conformed to approved mix proportions?
"A. It’s the engineer’s [architect’s] responsibility.
"Q. The engineer’s [architect’s] responsibility?
*897 "A. Yes, it’s so stated in the Buffalo Building Code [ch 12, § 1.3.1].”
Manifestly, the court by ruling as a matter of law that the code applied and submitting an erroneous interpretation of the contract including it, imposed a higher duty on the architect, acting on behalf of the owner, and permitted the jury to exonerate plaintiff for defects caused by the mix which it was the contractor’s duty to correct. The error was not rendered harmless by general language in the instructions, unrelated to this issue, on the general allocation of duties. Notwithstanding the jury’s answers to the interrogatories, these errors of law were substantial and necessarily infected the jury’s findings and verdict. Accordingly, I would reverse the judgment and Appellate Division order brought up for review, and grant a new trial.
Chief Judge Wachtler and Judges Kaye, Alexander, Titone and Bellacosa concur; Judge Simons dissents and votes to reverse in an opinion; Judge Hancock, Jr., taking no part.
Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs, in a memorandum.

 Defendant Chen was the owner and the architect and had retained a structural engineer. The terms owner, architect and engineer were used interchangeably to identify the architect’s responsibilities.